IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIN ZHANG, NING ZHANG and XUEGIN LIN,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>AIR CHINA LIMITED, and DOES 1 through 10,<br><br>　　　　Defendants.　　　　　　　　　　／ | No. C 11-06724 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Defendant Air China Limited has filed a motion to dismiss plaintiffs' complaint alleging wrongful death and survival causes of action. Pursuant to Civil Local Rul 7-1(b), the Court has determined that the matter is appropriate for submission without oral argument.

**BACKGROUND**

Decedent Wenpei Zhang suffered from severe chronic obstructive pulmonary disease and secondary pulmonary hypertension with chronic hypoxemia. Second Amended Complaint ("SAC") ¶ 11. His medical conditions required that he receive continuous supplementary oxygen. *Id.*

This case arises from Wenpei Zhang's death on November 5, 2009, which occurred a few days after defendant Air China Limited ("Air China") failed to provide him with an oxygen device that the airline had previously agreed to supply for a short flight from Beijing to Shenyan, China on Air China Flight 1625. Wenpei Zhang boarded Air China Flight 1625 on October 24, 2009, shortly after disembarking from a San Francisco, California flight to Beijing, China on United Airlines Flight 889.

SAC ¶¶ 26-28. United provided Wenpei Zhang with oxygen service during United Airlines Flight 889. SAC ¶ 26. Plaintiffs have not specifically alleged which air carrier, United or Air China, provided Wenpei Zhang with oxygen service during the waiting period between United Airlines Flight 889 and Air China Flight 1625. *See* SAC ¶ 17.

Wenpei Zhang's son, plaintiff Lin Zhang, used a $70 receipt to pay for the oxygen service that Air China was to supply on Air China Flight 1625. *E.g.*, ¶ SAC 23. Lin Zhang had received the $70 receipt weeks earlier, when Air China issued it to him at San Francisco International Airport ("SFO") as proof of payment for oxygen service that Air China had agreed to supply during an earlier round of flights – Air China Flight 986 from SFO to Beijing, China and Air China Flight 1653 from Beijing to Shenyang, China. SAC ¶ 14. Air China ultimately canceled Wenpei Zhang's tickets on that earlier round of flights and reimbursed the costs for them, after Wenpei Zhang discovered that Air China Flight 986 was not equipped to provide him with the appropriate oxygen service. SAC ¶¶ 14, 17. However, Air China did not reimburse the $70 paid for Wenpei Zhang's oxygen service on that earlier round of flights. SAC ¶ 17.

After the Air China flight from SFO to Beijing fell through, Lin Zhang purchased a ticket for his father on the United Flight 889 from SFO to Beijing. Lin Zhang then tried to book his father a flight from Beijing to Shenyang on Air China. *Id.* at ¶ 20. He discovered that a domestic flight could only be booked from California if the ticket was part of an Air China international flight. *Id.* He then attempted to purchase the Beijing-Shenyang flight through Air China's domestic air travel website, airchina.com.cn, but discovered the website only allowed domestic - within China - flights to be purchased by a credit card issued in China. *Id.* at ¶¶ 20, 21. Eventually, Wenpei Zhang's daughter, Ning Zhang, who lives in China but had no Chinese credit card, convinced the husband of a coworker in China to use his China issued credit card on Air China's domestic website to purchase three tickets for the one-hour and fifteen-minute Air China Flight 1625 on October 24, 2009. *Id.* at ¶¶ 21, 22, 28, Ex. E. Ning Zhang then reimbursed the coworker's husband for the tickets. *Id.* at ¶ 22.

Lin Zhang subsequently contacted Air China in China and was told that he could use his earlier $70 payment to pay for the oxygen service on Air China Flight 1625. SAC ¶ 23. Before boarding Air

China Flight 1625 in Beijing, Lin Zhang "'paid' for the oxygen service . . . by using the receipt that [he] already had from Air China showing [he] had paid this airline $70 for oxygen service." Lin Zhang Decl. ¶ 14.

Lin Zhang filed the original complaint in this action in state court on November 4, 2011. Doc. No. 1, Ex. A. On November 7, 2011, a first amended complaint ("FAC") added Wenpei Zhang's daughter Ning Zhang and his wife Xueqin Lin as plaintiffs. Doc. No. 1, Ex. B. Air China subsequently removed the case to federal court alleging jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1441. Doc. No. 1.

On February 29, 2012, Air China moved to dismiss, arguing, *inter alia*, that plaintiffs' claims are governed by the Convention for Unification of Certain Rules for International Carriage by Air, May 29, 1999, a treaty ratified by the United States in 2003 ("Montreal Convention" or "Convention"), and that the claims are time-barred under the Convention. Def.'s Mot. To Dismiss, Doc. No. 15. On March 14, 2012, plaintiffs filed an opposition to defendant's motion to dismiss. Pls.'s Opp., Doc. No. 17. The same day, plaintiffs filed their SAC. Doc. No. 16; *see* Fed. R. Civ. P. 15 (a)(1)(B). Defendant's reply brief argues that if the Montreal Convention does not apply, then the Court must dismiss the case for lack of jurisdiction under the Federal Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq*. Def.'s Reply, Doc. No. 23.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. In deciding whether the plaintiff has stated a claim upon which

3

relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

**DISCUSSION**

Air China's motion to dismiss argues that plaintiffs' claims fall under the Montreal Convention and are therefore time-barred under the Convention's statute of limitations. Defendant argues, in the alternative, that the pleadings show Air China is an agency or instrumentality of a foreign state and immune from this Court's jurisdiction under FSIA. Defendant also argues that plaintiffs lack standing to pursue their wrongful death claims, and are time-barred with respect to some wrongful death and all survival causes of action. Defendant's arguments will be addressed in turn.

**1.     Montreal Convention**

Air China's motion to dismiss argues that Air China Flight 1625 from Beijing, China to Shenyang, China is part of "international carriage" and therefore covered by the Montreal Convention, rather than a purely domestic flight falling outside the Convention's scope. *See* Defs.' Mot. To Dismiss

4:4-7:21.[1] Drawing all reasonable inferences in favor of plaintiff, the Court finds that the SAC does not support defendant's claim that plaintiffs' wrongful death and survival causes of action fall under the Convention.

The Montreal Convention applies to all international commercial air travel and is the exclusive remedy for injuries suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking." *See El Al Israel Airlines v. Tseng*, 525 U.S. 155, 161 (1999). The Convention embraces "all international carriage of persons, baggage, or cargo performed by aircraft for reward." Montreal Convention, Art. 1(1). "International carriage" includes trips involving domestic flight if, "according to the agreement of the parties," the domestic flight is a stopping place within a longer international journey. Montreal Convention Art. 1(2). International carriage may involve multiple "successive" air carriers, even when a carrier only provides carriage within a single country, so long as the carriage "has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts." The dispositive determinant in resolving whether a domestic flight is part of international carriage is the intent of the parties to enter into an agreement for international carriage. *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 987 (9th Cir.2004).

In the Ninth Circuit, there is a "firmly-settled methodology" for analyzing the parties' intent in the context of the Montreal Convention. *Coyle*, 363 F.3d at 989. For the inquiry into the parties' intent, "objective indications of the parties' intent take pride of place." *Kruger v. United Airlines*, 2007 WL 3232443, at *4 (N.D. Cal., Nov. 1, 2007) (Patel, J.). Thus a court's inquiry begins with "the objective

---

[1] As the cases cited below demonstrate, cases addressing the applicability of the Montreal Convention tend to involve plaintiff passengers asserting claims under the Convention and defendant airlines seeking to avoid the Convention's coverage. Air China has assumed an unusual posture by asserting the Convention's applicability.
    In the present case, however, if the Montreal Convention's statute of limitations were to apply, defendant argues that plaintiffs' suit would be time-barred. The Convention's statute of limitations is two years "reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." Montreal Convention, Art. 35. Air China Flight 1625 was scheduled to arrive in Shenyang on October 24, 2009, and carriage stopped that day due to cancellation. The last day to file a timely complaint under the Convention would have been October 24, 2011. The original complaint was filed on November 4, 2011, over a week later.

1 manifestations of the parties' intent expressed by the ticket." *Coyle*, 363 F.3d at 987; *Kruger*, 2007 WL 3232443, at *4 (stating that a court's inquiry begins with the "document of carriage or its equivalents"). A court may also call upon extrinsic evidence "to make sense of the objective indicia" presented in tickets. *Coyle*, 363 F.3d at 988 (citing *In re Envirodyne Indus.*, 29 F.3d 301, 305 (7th Cir. 1994) ("[e.g.,] dictionaries, treatises, articles, materials created by strangers to [a contractual] dispute.")). Furthermore, a court may look to "objective evidence of the circumstances of ticketing . . . [in] evaluating the connectedness of individual flight segments," if the record contains "an admission that the airline (or its agent) actually understood the disputed flight to have been part of the decedent's international journey . . . ." *Id.* at 989

For example, in *Kruger*, Judge Patel granted summary judgment for a defendant airline that asserted a domestic flight from San Francisco to Seattle was not part of a "single operation" in connection with a flight from Seattle, Washington to Brisbane, Australia. 2007 WL 3232443. The plaintiff in that case sought damages under the Montreal Convention. *Id.* at *2. In support of its conclusion, the court pointed to documentary evidence that: the passenger purchased the two flights from different airlines; the domestic e-ticket made no mention of an international leg; the international ticketing documentation did not mention the domestic leg; and the flights were separated by a day and a half layover. *Id.* at *4. The court rejected the plaintiff's arguments that she intended the flight to be part of an undivided international journey, and that she made her intent known to one of the airlines at several points in time. *Id.* at *5. The court concluded that nothing in the record indicated the airline providing the domestic flight had "agreed" to be part of a series of contracts relating to international travel. *Id.* at *6. *See also Auster v. Ghana Airways,* 514 F.3d 44, 46-47 (D.C. Cir. 2008) (granting summary judgment on similar grounds for defendant Ghanaian airline in a case arising from a domestic-within Ghana flight).

In *Kruger* and *Auster* the courts performed fact intensive analyses before arriving at conclusions about the parties' intent. These cases were decided on summary judgment.

Drawing all inferences in favor of the plaintiffs, the Court finds that it is a reasonable conclusion that Air China did not have the requisite intent to establish international carriage under the Montreal

6

1 Convention. Air China Flight 1625 from Beijing to Shenyang was purchased separately from United
2 Flight 889 from SFO to Beijing. Unlike the United Flight, which was purchased by Lin Zhang in San
3 Francisco, the Shenyang flight was purchased in China using a Chinese issued credit card, by Lin
4 Zhang's sister's co-worker's husband. Therefore, the Court DENIES Air China's motion to dismiss
5 under the Montreal Convention. Air China is free to re-raise its Montreal Convention arguments upon
6 further development of the factual record.

7

8 **2.    FSIA**

9 Air China first raised a sovereign immunity argument in its reply brief, arguing that if the Court
10 finds that the Montreal Convention does not apply, then this Court lacks jurisdiction under FSIA. *See*
11 Def.'s Reply 11:6-14:7. In anticipation of plaintiffs' future response, Air China asserts Air China is an
12 instrumentality of a foreign state, China, and that the commercial activity exception to FSIA does not
13 apply. *See, e.g.*, Defs.' Reply 11:10-16, 12:9-24; (citing Def.'s Notice of Removal ¶ 7).

14 The Federal Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq.*, "is the
15 exclusive source of subject matter jurisdiction over all suits involving foreign states or their
16 instrumentalities." *Gupta v. Thai Airways Intel, Ltd.*, 487 F.3d 759, 763 (9th Cir. 2007). Under FSIA,
17 foreign sovereigns enjoy immunity from suit in a federal or state court unless one of several statutory
18 exceptions apply. *Id.* at 761 n.2, 763; 28 U.S.C. § 1604. Exceptions to FSIA are set forth in 28 U.S.C.
19 §§ 1605-1607.

20 Section 1604 of FSIA creates a "statutory presumption that a foreign state is immune from suit."
21 *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124 (9th Cir. 2010). The presumption "applies
22 if it is apparent from the pleadings or uncontested that the defendant is a foreign state." *Id.* at 1125.
23 Otherwise, to trigger the presumption, "the defendant must make a *prima facie* case that it is a foreign
24 state." *Id.* at 1124. After the sovereign establishes a prima facie case, "the burden of production shifts
25 to the plaintiff to offer evidence that an exception applies." *Id.* at 1125; *Phaneuf v. Republic of*
26 *Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997). When "plaintiff satisfies her burden of production,
27 jurisdiction exists unless the defendant demonstrates by a preponderance of the evidence that the

28

1 claimed exception does not apply." *Id.* at 1125.

2 A corporation is considered an agency or instrumentality of a foreign state under FSIA if a
3 foreign state or political subdivision holds a controlling share or a majority interest. *See Gupta*, 487
4 F.3d at 761 n.2 (citing 28 U.S.C. § 1603(b)(2)). In its reply brief, defendant asserts that Air China is
5 a foreign state-owned carrier, and therefore an agency or instrumentality of a foreign state for FSIA
6 purposes. Def.'s Reply 12: Hession Decl. ¶ 3, Ex. B, Doc. No. 23-1.

7 Exceptions to FSIA are set forth in 28 U.S.C. §§ 1605-1607. Since defendant first raised the
8 sovereign immunity issue in the reply brief, plaintiffs have not yet had an opportunity to respond to it.
9 However, defendant anticipates that plaintiffs will invoke the commercial activity exception to FSIA,
10 which defendant asserts does not apply. *See, e.g.*, Defs.' Reply Br. 12:17-24. Assuming for the
11 purposes of this motion that plaintiffs intend to rely on the commercial activity exception, the Court
12 addresses it here.

13 For FSIA's commercial activity exception to apply, two components must generally be present:
14 (1) commercial activity and (2) a nexus between the activity and the United States. FSIA defines
15 "commercial activity" to include "a regular course of commercial conduct or a particular commercial
16 transaction or act." 28 U.S.C. § 1603(d). Under FSIA, "[t]he commercial character of an activity shall
17 be determined by reference to the nature of the course of conduct or particular transaction or act, rather
18 than by reference to its purpose." *Id.* There are three ways to achieve the commercial nexus. *See Saudi*
19 *Arabia v. Nelson*, 507 U.S. 349, 356 n.3 (1993). Section 1605(a)(2) of FSIA provides that a commercial
20 exception applies to cases in which:

21 the action is based [first] upon a commercial activity carried on in the United States by the foreign state; or [second] upon an act performed in the United States in connection
22 with a commercial activity of the foreign state elsewhere; or [third] upon an act outside the territory of the United States in connection with a commercial activity of the foreign
23 state elsewhere and that act causes a direct effect in the United States.

24 The D.C. Circuit held that the first commercial exception applied where a plaintiff's negligence
25 claim for an injury at a foreign airport was "based upon" her purchase in the United States of a ticket
26 on Air France (then owned by the Republic of France). *Kirkham v. Air France*, 429 F.3d 288, 290
27 (D.C.Cir. 2005). The court found that the ticket sale was a "necessary" element in establishing the

28

plaintiff's claim for negligence and thus a "sufficient" trigger for the first commercial activity exception. *Id.* at 292. The plaintiff purchased an Air France ticket from Paris to Bastia, France through a Washington, D.C. based travel agency (in addition to a ticket from the United States to Paris). She argued that the "ticket sale established a passenger-carrier relationship" which imposed a duty on the airline to provide "safe passage" between Paris and Bastia, and that airline's negligence breached that duty. *See id.* at 291. In finding jurisdiction to hear the suit, the court explained that "under the FSIA, once a foreign state engages in a commercial activity in the United States, it becomes subject to litigation based upon that activity – just like any other commercial actor." *Id.* at 293.

In *Barkanic v. General Admin. of Civil Aviation of Peoples Republic of China*, 822 F.2d 11 (2d Cir. 1987), the Second Circuit similarly found a commercial nexus between tickets purchased in the United States and the wrongful death actions resulting from a plane crash that occurred en route between two Chinese cities. The Chinese airline agency was authorized to operate within the United States and had conducted a few flight operations there. The agency also had a reciprocal agreement with Pan American for the purchase of tickets. The tickets for the flight were purchased in the United States through a travel agency that represented Pan American. Notably, the court did not find it significant that the deceased actually were boarded onto a flight different from the one for which they were originally scheduled. *Id.* at 12-13.

Assuming that defendant can meet its burden of showing that it is an instrumentality of China, plaintiffs' allegations in this case indicate that the first commercial activity exception may apply, that is, that "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). China Air does business in the United States. *See* SAC. ¶ 6. More critically, the $70 dollar oxygen service receipt obtained in the United States for the cancelled SFO to Beijing Air China Flight was used to purchase the defective oxygen service for Air China Flight 1625 to Shenyang. The Court finds that, at this stage, the $70 receipt, like the tickets purchased in the United States in *Kirkham* and *Barkanic,* establishes the requisite nexus.

This Court concludes that on the state of the current record plaintiffs have demonstrated a sufficient nexus between Air China's failure to provide oxygen services and the $70 receipt which was

issued in the United States. As with the Montreal Treaty Claim, defendant may re-raise the issue upon further development of the factual record. Based on this analysis, the Court concludes that it has subject matter jurisdiction to hear plaintiffs claims under FSIA's commercial exception, and DENIES defendant's motion to dismiss regarding its FSIA claim.

### 3. Wrongful Death And Survival Actions[2]

#### A. Standing for Wrongful Death Suit

Defendant contends that plaintiffs lack standing to sue for wrongful death under state law, arguing that "[u]nder California law, only a personal representative of the estate of the decedent may assert a wrongful death claim."[3] However, defendant's assertion is incorrect. California Code of Civil Procedure § 377.60(b) expressly permits decedent's spouse and children to bring a "cause of action for the death of a person caused by the wrongful act or neglect of another." The cause of action belongs to these specified persons who, "because of their relation to the deceased, are presumed to be injured by [decedent's] death." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256 (2006). Section 377.60(b) therefore grants the spouse and children of Wenpei Zhang standing to bring wrongful death claims.

Defendant cites two inapposite cases to support the assertion that plaintiffs lack standing. Defendant cites *Welch v. Yoell*, 73 Fed. Appx. 215 (9th Cir. 2003) in which a court dismissed a wrongful death case for lack of standing, on the grounds that plaintiff did not fall under one of the statutorily enumerated categories of persons with standing to sue for wrongful death under § 377.60. In *Welch*, the plaintiff was the stepfather of the wrongful death decedent, but he had not adopted the victim, was not the personal representative of victim's estate, had no entitlement to victim's property under intestate succession, and was not a dependent parent of the victim. *Id.* at 216. Unlike the plaintiff in *Welch*, all plaintiffs in the present case fall directly within the categories of persons with standing to sue

---

[2] Because plaintiffs did not e-file the SAC's page-2, the Court relies on the FAC's page-2 to determine that plaintiffs allege causes of action under Cal. C. Civ. P. §§ 377.20, 377.34, 377.60, 377.62.

[3] The Court does not address defendant's arguments regarding standing under the Montreal Convention, as this Court denies defendant's assertion that the Montreal Convention applies.

1 enumerated in § 377.60. Defendant also cites *Moreland v. Law Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998); however, that case involved Nevada's Revised Statutes § 41.085(2) rather than any California statute. *Id.* at 370. Further, § 41.085(2) expressly permits both decedent's heirs and decedent's personal representatives to "each maintain an action" for wrongful death.

Thus, the plaintiffs in this case have standing to maintain wrongful death causes of action under California law.

### B. Statute Of Limitations for Wrongful Death and Survival Actions

Defendant also argues that the statute of limitations has run on plaintiffs' Nin Zhang and Xuegin Lin's wrongful death claims, and on all plaintiffs' survival claims.

#### i. Ning Zhang's and Xuegin Lin's Wrongful Death Causes of Action

Defendant argues that Ning Zhang's and Xuegin Lin's wrongful death causes of action are barred by California's two-year statute of limitations. Under California law, wrongful death is a statutory "cause of action that arises on the death of the decedent and is vested in the decedent's heirs." *Quiroz*, 140 Cal. App. 4th at 1263. The wrongful death statute of limitations runs two years from the date of death. Cal. Civ. Code. § 335.1; *Walton v. S. Pac. Co.*, 8 Cal. App. 2d 290, 304 (1935); 6 Witkin, Summary of California Law 19th (2005) Torts, § 1379.

Wenpei Zhang died on November 5, 2009. Under normal circumstances the statute of limitations for filing a wrongful death action based on his death was November 5, 2011. However, November 5, 2011 fell on a Saturday. Saturdays and Sundays are holidays for the purposes of statute of limitations computations. Cal. Code Civ. P. §§ 12a; Cal. Gov't Code § 6700. Under California procedural rules for computing the time during which an action may be brought, "[i]f the last day for performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is . . . extended to and includ[es] the next day that is not a holiday." Cal. Code Civ. P. § 12a; *see also* Cal. Code Civ. P. §§ 12, 135; Fed. R. Civ. P. 6(a)(1)(C) ("When the period is stated in days . . . include the last day of the period, but if the last day is a Saturday or Sunday . . . the

11

period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Plaintiffs Ning Zhang and Xuegin Lin therefore filed timely wrongful death actions, because the FAC which named them as plaintiffs and which alleged wrongful death causes of action, was filed on Monday, November 7, 2011.

The Court, therefore, DENIES defendant's motion to dismiss Ning Zhang's and Xuegin Lin's wrongful death causes of action.

### ii. Survival Causes of Action

Defendant argues that all three plaintiffs are time-barred from asserting survival claims on behalf of decedent. Def.'s Mot. To Dismiss 11:1-12:13. However, like plaintiffs' wrongful death cause of action, decedent's survival causes of action were filed on the last timely date to bring suit, Monday, November 7, 2011.

Unlike a wrongful death cause of action, "a survivor cause of action is not a new cause of action that vests in the [decedent's] heirs on the death of the decedent." *Quiroz*, 45 Cal. App. 4th at 1264. Rather, it is a "cause of action which belonged to the decedent before death, but by statute, survives that event." *Id.* The surviving cause of action passes to decedent's successor in interest and is enforceable by "decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code Civ. P. § 377.30.

California Code of Civil Procedure § 335.1 provides a two year statute of limitations for an action claiming an injury resulting from another's negligent act. If the person entitled to bring the negligence action dies before the expiration of the statute of limitations period, the cause of action survives and may be brought within that two year period by decedent's personal representative or successor in interest. *See* Cal. Code Civ. P. § 366.1. Here, the final date for a personal representative to file a survival action was November 7, 2011.

The pleadings in the FAC and SAC name Xueqin Lin as decedent's personal representative for purposes of his survival actions. *E.g.*, FAC ¶¶ 2, 4; SAC ¶ 46; Pls.'Opp. 13:15-14:9. Defendant attempts to call Xueqin Lin's status as decedent's personal representative into question in defendant

12

counsel Attorney Michael A. Hession's March 28, 2012 declaration. However, at the pleading stage the Court must assume the truth of plaintiff's allegations drawing all reasonable inferences in plaintiffs' favor. Hession Decl. ¶ 4, Doc. No. 23-1.

For these reasons, the Court DENIES defendant's motion to dismiss the survival claims.

## CONCLUSION

The Court DENIES defendant Air China's motion to dismiss, without prejudice to further consideration on a more fully developed factual record.

**IT IS SO ORDERED.**

Dated: April 17, 2012

SUSAN ILLSTON
United States District Judge

13